UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SATPAL SACHDEVA,

                    Petitioner,

        v.

ANDREA QUARANTILLO,
In her official capacity as the Long Island Field
Office Director, U.S. Citizenship & Immigration Services;

JUDITH ALMODOVAR,
In her official capacity as the New York Field Office,
Director, U.S. Immigration & Customs Enforcement;

KRISTI NOEM,
Secretary, U.S. Department of Homeland Security;

TODD M. LYONS,
Acting Director, U.S. Immigration and Customs
Enforcement; and

PAMELA BONDI,
U.S. Attorney General,

                    Respondents.
-------------------------------------------------------------------x

Civil Action No.
26-cv-276 (GRB)

**MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE WHY THE PETITION FOR WRIT OF
<u>HABEAS CORPUS SHOULD NOT BE GRANTED</u>**

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, New York 11722
*Attorney for Respondents*

MADELINE O'CONNOR
Assistant United States Attorney
*Of Counsel*

Date of Service: March 4, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................ ii

PRELIMINARY STATEMENT..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

PROCEDURAL HISTORY ........................................................................................... 6

ARGUMENT.................................................................................................................. 7

    I.      Petitioner's Claims Are Jurisdictionally Barred By 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g), As Challenges to Petitioner's Order of Removal ........................... 7

    II.    Petitioner's Arguments Are Without Merit and He Should Be Returned to the Custody of ICE Pending His Removal ............................................................11

CONCLUSION........................................................................................................... 18

# TABLE OF AUTHORITIES

## Federal Cases

*Achbani v. Homan*,
No. 3:17-CV-1512, 2017 WL 4227649 (D. Conn. Sept. 22, 2017) ........................................ 10

*Asylum Seeker Advoc. Project v. Barr*,
409 F. Supp. 3d 221 (S.D.N.Y. 2019) ................................................................. 7, 9, 17

*Avila v. U.S. Atty. Gen.*,
560 F.3d 1281 (11th Cir. 2009) .............................................................................. 16

*Ceesay v. Bondi*,
No. 25-CV-3716, 2025 WL 1435615 (S.D.N.Y. May 16, 2025) .............................................. 10

*Contreras v. United States*,
672 F.2d 307 (2d Cir. 1982) ................................................................................. 18

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) .............................................................................. 8, 11

*Familia v. Holder*,
600 F. App'x 23 (2d Cir. 2015) ............................................................................. 15

*Garcia-Marrufo v. Ashcroft*,
376 F.3d 1061 (10th Cir. 2004) ............................................................................ 16

*Garcia-Villeda v. Mukasey*,
531 F.3d 141 (2d Cir. 2008) ............................................................................... 15

*Gondal v. USDHS*,
343 F. Supp. 3d 83 (E.D.N.Y. 2018) ......................................................................... 9

*Ibarra-Flores v. Gonzales*,
439 F.3d 614 (9th Cir. 2006) .............................................................................. 10

*Iouri v. Ashcroft*,
487 F.3d 76 (2d Cir. 2007) ................................................................................ 10

*Jean-Baptiste v. Reno*,
144 F.3d 212 (2d Cir. 1998) ................................................................................ 9

*K.K. v. Garland*,
No. 23-cv- 6281, 2025 WL 274431 (W.D.N.Y. Jan. 23, 2025)................................................. 9

ii

*Lin v. Borgen*,
   No. 25-CV-05618, 2025 WL 2158874 (S.D.N.Y. July 30, 2025) ........................................ 9, 10

*Miller v. Mukasey*,
   539 F.3d 159 (2d Cir. 2008) .......................................................................................... 15

*Oriakhi v. DHS*,
   762 F. Supp. 3d 183 (E.D.N.Y. 2025) ............................................................................. 8

*Rafaelano v. Wilson*,
   471 F.3d 1091 (9th Cir. 2006) ..............................................................................10, 11, 13

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ....................................................................................................... 9

*Rodriguez v. Warden, Orange Cnty. Corr. Facility*,
   No. 23-CV-242, 2023 WL 2632200 (S.D.N.Y. Mar. 23, 2023) ........................................ 9, 10

*Shtyllaku v. Gonzales*,
   252 F. App'x 16 (6th Cir. 2007) .................................................................................... 13

*Skaftouros v. United States*,
   667 F.3d 144 (2d Cir. 2011) .......................................................................................... 12

*Thapa v. Gonzales*,
   460 F.3d 323 (2d Cir. 2006) .......................................................................................... 13

*Villatoro v. Noem*,
   No. 25-cv-5306, 2025 WL 2880140 (E.D.N.Y. Oct. 9, 2025) .......................................... 9

*Villegas de la Paz*,
   640 F.3d ..................................................................................................................... 16

*Warner v. Ashcroft*,
   381 F.3d 534 (6th Cir. 2004) ........................................................................................ 13

*Yuan v. Garland*,
   2022 WL 12104055 (2d Cir. 2022) ................................................................................ 15

**Federal Statutes**

5 U.S.C. § 701(a)(1)..............................................................................................................11

8 U.S.C. § 1231(a)(2)(A) ...........................................................................................1, 11, 17, 18

8 U.S.C. § 1252(b)(9) ........................................................................................................ 7, 10

8 U.S.C. § 1252(g) ............................................................................................................. 1

8 U.S.C. § 1255............................................................................................................ 16

8 U.S.C. § 1357(a)(2)................................................................................................... 17

8 U.S.C. §§ 1252(a)(5).............................................................................................1, 7, 11

**Federal Regulations**

8 C.F.R § 241.8 ........................................................................................................ 1, 14

8 C.F.R § 241.8(a)..................................................................................................... 1, 15

8 C.F.R § 241.8(a)-(b)................................................................................................. 14

8 C.F.R § 241.8(b)......................................................................................................... 2

Defendants-Respondents ("Respondents"),[1] by and through their attorney, Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, Madeline O'Connor, of counsel, respectfully submit this memorandum of law in response to the Court's Order to Show Cause why Petitioner Satpal Sachdeva's ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition") should not be granted.

## PRELIMINARY STATEMENT

Petitioner's claims, which challenge ICE's reinstatement of a prior order of removal, are jurisdictionally barred by 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). As discussed more fully below, 8 U.S.C. § 1252(a)(5) and § 1252(b)(9) bar any claim that challenges, directly or indirectly, a reinstated order of removal. Such claims may be reviewed only through a petition for review filed with an appropriate court of appeals. Additionally, 8 U.S.C. § 1252(g) bars any claim challenging the execution of a reinstated order of removal. Accordingly, the Petition must be dismissed for lack of jurisdiction.

Assuming *arguendo* that the Court were to find it has jurisdiction to hear Petitioner's claims, the Petition should nonetheless be dismissed, and Petitioner should be returned to the custody of ICE pending his removal, in accordance with 8 U.S.C. § 1231(a)(2)(A). 8 C.F.R § 241.8 sets forth the limited steps required to reinstate a prior order of removal. An immigration officer must: 1) obtain the prior removal order, 2) confirm the alien's identity, and 3) determine whether the alien unlawfully reentered the country. 8 C.F.R § 241.8(a). The alien is to then receive: 1) written notice of the determination to reinstate the prior order of removal, 2) an

---

[1] Petitioner brings this action against Andrea Quarantillo, in her official capacity as Long Island Field Office Director, U.S. Citizenship and Immigration Services ("USCIS"); Judith Almodovar, in her official capacity as New York Field Office Director, U.S. Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Todd M. Lyons, Acting Director, ICE; and Pamela Bondi, U.S. Attorney General.

1

opportunity to contest that determination, and 3) consideration of his objection (if one was made) by an immigration officer.  8 C.F.R § 241.8(b).

Here, there is no genuine dispute that ICE complied with § 241.8's requirements. Petitioner's challenges to ICE's actions -- namely, challenges premised on the false assertions that there was no prior order of removal to reinstate and that Petitioner did not have an opportunity to contest the reinstatement of the prior order of removal -- are plainly belied by the record.  Because Petitioner has failed to meet his burden of showing that his detention is unlawful, the Petition should be denied, and Petitioner should be returned to the custody of ICE.

STATEMENT OF FACTS

On March 27, 1991, Petitioner was encountered at Los Angeles International Airport upon attempting to enter the United States using a *fraudulent* passport under the name of Sham Lal Sobino Ram Verma.  *See* Declaration of Supervisory Detention and Deportation Officer Khristopher Dawson, dated March 4, 2026 ("Dawson Decl.") ¶ 3.  Petitioner was served with a Form I-122, Notice To Applicant For Admission Detained For Hearing Before Immigration Judge. [2]  *Id.*  On June 15, 1993, after *failing to appear* for his scheduled hearing, Petitioner was ordered excluded from the United States under alien number A070-059-348.  *Id.* ¶ 5.  Notably, the order did not provide for a voluntary departure by Petitioner.  *Id.*

According to Petitioner, on June 12, 1994, he married his first wife, Jaswinder Kaur Sachdeva ("Kaur"), in India.  Petition ¶ 13.  On August 21, 1994, only two months after his alleged marriage to Kaur in India, Petitioner was again encountered by Immigration Officials upon his unlawful entry to the United States, by way of a flight from India to John F. Kennedy

---

[2] Notably, on April 12, 1991, Petitioner executed an affidavit in which he admitted that he entered the United States using a fraudulent passport in the name of Sham Lal, but rather than provide his purportedly real name of Satpal Sachdeva, and purportedly real birth date of May 10, 1968, *see* Petition ¶¶ 5, 9, Petitioner made *additional fraudulent statements* that his real name was Sarjit Singh and that he was born on July 14, 1968.  Dawson Decl. ¶ 4.

Airport in New York, using *another fraudulent* document, *i.e.*, a counterfeit Form I-512, Advance Parole. Dawson Decl. ¶ 6.[3] Petitioner reported that his name was Satpal Sachdeva. He was assigned alien number A072-159-036. *Id.* That same day, August 21, 1994, Petitioner was served with a Form I-122, Notice To Applicant For Admission Detained For Hearing Before Immigration Judge, and detained in Elizabeth, New Jersey pending a hearing before an Immigration Judge. *Id.* ¶ 7.

On January 4, 1995, Petitioner was ordered excluded and deported from the United States. Dawson Decl. ¶ 8. On January 19, 1995, Petitioner was removed from the United States to India. *Id.* His removal was *involuntary*. Indeed, on January 19, 1995, Immigration Officers retrieved Petitioner from the detention center in Elizabeth, New Jersey, escorted him to John F. Kennedy Airport in New York, and boarded him on a plane to India. *Id.* Importantly, the instructions provided to the Immigration Officers who were tasked with removing Petitioner specifically noted that Petitioner was "LIKELY TO ABSCOND – USE CAUTION." *Id.*

Despite being twice ordered excluded/deported from the United States, in or around 1996, purportedly following the birth of his first child with Kaur in India, Petitioner *again re-entered* the United States *without being admitted, inspected or paroled*.[4] Petition ¶ 15; Dawson Decl. ¶¶ 9, 10. Thereafter, he remained undetected in the United States for approximately half a decade until Petitioner's purported second wife, Maritza Figueroa ("Figueroa"), filed a Form I-

---

[3] It is unclear when Petitioner departed the United States between the first time he was encountered on March 27, 1991, and the next time he was encountered on August 21, 1994, but there is no evidence that when Petitioner departed it was pursuant to an agreement with ICE (or its predecessors) or an order from an Immigration Judge that would have allowed for a voluntary departure. *Id.* ¶ 6.

[4] The documents submitted by, and on behalf of, Petitioner provide inconsistent dates of re-entry in 1996. *Compare* Petition ¶ 15 (indicating that Petitioner re-entered in September 1996), *and* Dawson Decl., Exh. N at p. 1, ¶ 14 (same) *with* Dawson Decl., Exh. L at p. 1, ¶ 14 (indicating that Petitioner entered without inspection ["EWI"] in July 1996).

130, Petition for Alien Relative, on his behalf, on or about April 17, 2001.[5]  Petition ¶ 15;

Dawson Decl. ¶ 10.  In addition, on or about April 17, 2001, Petitioner filed a Form I-485,

Adjustment of Status Application, seeking Lawful Permanent Residence.  Dawson Decl. ¶ 10.

Petitioner claims to have divorced his first wife, Kaur, on September 30, 1998 -- after he

illegally re-entered the United States for at least the *third* time in or around 1996 -- and married

Figueroa on April 5, 2001.  Petition ¶¶ 15, 16; *see also* Dawson Decl. ¶¶ 10, 11.  However, while

allegedly married to Figueroa, and while Figueroa's I-130 petition on Petitioner's behalf was

pending, Petitioner impregnated his ex-wife, Kaur, with their second child, who was born in the

United States on September 30, 2002.  Dawson Decl. ¶ 11.

On April 15, 2002, U.S. Citizenship and Immigration Services ("USCIS") denied

Petitioner's application for adjustment of status because Petitioner once again missed a

scheduled interview.  Dawson Decl. ¶ 12.  According to Petitioner, Figueroa's I-130 petition on

Petitioner's behalf was also "denied because of a missed interview."  Petition ¶ 16.  Petitioner

and Figueroa subsequently divorced on May 19, 2004.  Dawson Decl. ¶ 12.

On February 15, 2011, Petitioner remarried Kaur, who, on September 26, 2016, filed

another Form I-130, Petition for Alien Relative, on Petitioner's behalf.[6]  Dawson Decl. ¶ 13;

Petition ¶ 17.  On March 1, 2024, Petitioner filed a second Form I-485, Adjustment of Status

Application, seeking an adjustment of status pursuant to Immigration and Nationality Act

("INA") § 245(i), and, on November 5, 2024, Petitioner filed a Form I-601, Application for

Waiver of Inadmissibility.  Dawson Decl. ¶ 13.

---

[5] Notably, Figueroa's Form I-130 substantiates that Petitioner was removed from the United States on January 4, 1995, via the John F. Kennedy Airport in New York.  *See* Dawson Decl., Exh. N at p. 1, ¶ 16.
[6] Kaur's Form I-130 also evidences that Petitioner was ordered excluded/deported on January 4, 1995, while he was detained at the Elizabeth Detention Facility.  *See* Dawson Decl., Exh. L at p. 1, ¶ 16.

On February 3, 2025, USCIS denied Petitioner's applications for Adjustment of Status and Waiver of Inadmissibility because of, *inter alia*, Petitioner's "disregard of the laws of the United States, and [his] history of fraud and willful misrepresentation[s]." *Id.* ¶ 14. On April 30, 2025, Petitioner filed yet another Form I-485 application, which is pending USCIS's decision. *Id.*

On January 15, 2026, Petitioner was encountered at USCIS, in Holtsville, New York. Dawson Decl. ¶ 15. ICE Officers identified themselves and requested identification from Petitioner. *Id.* Petitioner provided his Indian passport and confirmed his name, place of birth ("POB"), and date of birth ("DOB"). *Id.* An ICE records check revealed that Petitioner was subject to removal. *Id.* Petitioner was then arrested pursuant to the January 4, 1995 final order of exclusion and deportation, which was the basis for the issuance of a Form I-205, Warrant of Removal/Deportation. *Id.* He was transported that same day to ICE's intake office at Nassau County Correctional Center ("NCCC") for post-arrest processing and booked in at NCCC. *Id.*

During processing, an ICE Officer confirmed Petitioner's identity; confirmed that "[o]n January 4, 1995[, Petitioner] was issued a final order of removal by an Immigration Judge," and "[o]n January 19, 1995 . . . was removed from the United States," and confirmed that "[o]n or about July 15, 1996," Petitioner "reentered the United States without being admitted, inspected or paroled by an Immigration Officer." Dawson Decl. ¶ 16. The ICE Officer determined that Petitioner would "be processed as reinstatement." *Id.*

Petitioner was provided with a Notice of Intent/Decision to Reinstate Prior Order (the "Notice of Reinstatement"), which notified Petitioner that ICE "intend[ed] to reinstate the order of [r]emoval entered against" him based on the determinations that he: 1) was "an alien subject to a prior order of deportation/exclusion/removal entered on January 4, 1995"; 2) was "identified

as an alien who[] was removed on January 19, 1995 pursuant to an order of deportation/exclusion/removal"; and 3) "illegally reentered the United States on or about 3/27/1991 [sic]." *Id.* ¶ 17. The Notice of Reinstatement expressly provided that Petitioner could "contest th[e] determination by making a written or oral statement to an immigration officer" and that Petitioner did "**not** have a right to a hearing before an immigration judge." *Id.* The Notice of Reinstatement also contained a section titled, "Acknowledgement and Response," wherein the Petitioner could indicate if he "wish[ed] to make a statement contesting th[e] determination"; however, Petitioner refused to sign the Acknowledgement and Response. *Id.* In addition to receiving the Notice of Reinstatement, Petitioner was provided with an Online Detainee Locator System (ODLS) Privacy Notice; Form I-229(a), Warning for Failure to Depart, with accompanying list of things Petitioner was required to complete within 30 days; Warrant for Arrest of Alien; and a Warning to Alien Ordered Removed or Deported. *Id.* ICE detained Petitioner for the purpose of removing him. *Id.*

The next day, January 16, 2026, Petitioner was booked out of NCCC at approximately 8:33 a.m. and transported to Delaney Hall Detention Facility in New Jersey, where he remained until he was released on bond by Order of this Court on January 21, 2026. Dawson Decl. ¶ 18.

**PROCEDURAL HISTORY**

On January 16, 2026, Petitioner, through his counsel, filed the Petition (ECF Dkt. #1), seeking a writ of habeas corpus from this court. The Petition asserts that his detention[7] is unlawful because it supposedly: (1) constitutes unlawful detention without statutory authority (Count I); (2) constitutes ultra vires and an invalid reinstatement of pre-Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") exclusion orders (Count II); (3) violates

---

[7] Although Petitioner has been released from detention on bond, Respondents refer to his detention in the present tense in order to address the relief sought in the Petition.

the Fifth Amendment's due process clause (Count III, Count IV, Count V); (4) violates the

Administrative Procedure Act ("APA") as an agency action that is "arbitrary, capricious, an

abuse of discretion, and contrary to law" (Count VI); and (5) violates the Constitution's

Suspension Clause (Count VII).  Petition ¶¶ 49-74.

The government responded on January 20, 2026, *see* ECF Dkt. #8, and Petitioner replied

on January 21, 2026, *see* ECF Dkt. #9.  On January 21, 2026, the Court Ordered that Petitioner

be released on bond while the parties more thoroughly briefed the legal issues raised by this

action.  *See* ECF Dkt. #10.  On February 11, 2026, Petitioner filed a supplemental brief in

support of the Petition (the "Supplemental Brief").  *See* ECF Dkt. #12.

## ARGUMENT

**I.      Petitioner's Claims Are Jurisdictionally Barred By 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g), As Challenges to Petitioner's Order of Removal**

As a threshold matter, this Court lacks jurisdiction to review Petitioner's claims pursuant

to 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g).  8 U.S.C. § 1252(a)(5) provides, in relevant

part, that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and

exclusive means for judicial review of an order of removal."  As a corollary, 8 U.S.C. §

1252(b)(9) provides that "no court shall have jurisdiction, by habeas corpus . . . to review such

an order or . . . questions of law and fact [arising from such an order]."  "Taken together, §

1252(a)(5) and § 1252(b)(9) mean that any issue — whether legal or factual — arising from any

removal-related activity can be reviewed only through" a petition for review filed with an

appropriate court of appeals.  *Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 224

(S.D.N.Y. 2019) (citation and internal quotation marks omitted).  "Put differently, Sections

1252(a)(5) and 1252(b)(9) channel all challenges to removal orders and removal proceedings to

the courts of appeals."  *Id.*  Section 1252(g) further provides, in relevant part, that "no court shall

have jurisdiction to hear *any* cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders." (emphasis added). These bars to jurisdiction apply not only to initial removal orders, but to reinstated removal orders as well. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).

The Second Circuit, in *Delgado*, construed §§ 1252(a)(5) and 1252(b)(9) broadly to preclude district courts from exercising subject matter jurisdiction over claims that even "indirectly challeng[e]" a reinstated order of removal. *Id.* A claim sufficiently challenges a reinstated order of removal when the requested relief could ultimately render the order invalid. *Id.*

In *Delgado*, an alien subject to a reinstated order of removal brought a mandamus action seeking to compel USCIS to adjudicate the merits of her Form I-212 (Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal). *Id.* at 54. The Second Circuit affirmed the district court's dismissal for lack of jurisdiction. *Id.* at 55. Although the court acknowledged that granting mandamus relief would not "per se prevent [the alien's] removal," it explained that USCIS's approval of the alien's I-212 waiver was a necessary "prerequisite" to obtaining adjustment of status. *Id.* (internal quotation marks omitted). Because compelling USCIS to adjudicate the I-212 could ultimately lead to adjustment of status – and thus foreclose execution of the reinstated removal order – the court held that the mandamus action constituted an impermissible indirect challenge to the order itself. *Id.*

Notably, the §§ 1252(a)(5) and 1252(b)(9) jurisdictional bar encompasses claims predicated on violations of the United States Constitution. *Delgado* applied the bar to Due Process and Equal Protection claims. *Delgado*, 643 F.3d at 54-55; *see also Oriakhi v. DHS*, 762 F. Supp. 3d 183, 185-86 (E.D.N.Y. 2025) (Matsumoto, J.) (holding that § 1252(a)(5) barred a

claim predicated on an alleged due process violation), *aff'd*, No. 25-243-cv, 2026 WL 303642 (2d Cir. Feb. 5, 2026); *Villatoro v. Noem*, No. 25-cv-5306, 2025 WL 2880140, at *3 (E.D.N.Y. Oct. 9, 2025) (Merchant, J.) (same).  Likewise, § 1252(g) bars *all* claims challenging the execution of a removal order, so the bar is not limited to claims that challenge ICE's discretionary conduct, and therefore also includes challenges to conduct that allegedly violates federal law, including, without limitation, a provision of the United States Constitution.  *See, e.g.*, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488 (1999) (§ 1252(g) barred First Amendment challenge to deportation)*; Jean-Baptiste v. Reno*, 144 F.3d 212, 214, 218 (2d Cir. 1998) (§ 1252(g) barred Fifth  Amendment due process challenge to deportation); *K.K. v. Garland*, No. 23-cv- 6281, 2025 WL 274431, at *2 (W.D.N.Y. Jan. 23, 2025) (dismissing action alleging violations of "various constitutional, statutory and regulatory provisions"), *appeal dismissed sub nom. K.K. v. Bondi*, No. 25-190 (2d Cir. Apr. 8, 2025).[8]

"Following *Delgado*, many district courts in this Circuit have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction."  *Lin v. Borgen*, No. 25-CV-05618, 2025 WL 2158874, at *3 (S.D.N.Y. July 30, 2025) (Garnett, J.); *see also  Asylum Seeker Advoc. Project*, 409 F. Supp. 3d at 225 (collecting cases).  Among such challenges are challenges to detention for the purpose of removing the detained alien.  For example, in *Rodriguez v. Warden, Orange Cnty. Corr. Facility*, the district court, citing §§ 1252(a)(5), 1252(b)(9) and 1252(g), dismissed the petitioner's habeas claim seeking release from immigration custody while the petitioner's applications requesting a change in immigration status remained pending because the petitioner was subject to a reinstated order of removal, and was detained for the purpose of removing him.  *Rodriguez v. Warden, Orange Cnty. Corr. Facility*, No. 23-CV-242, 2023 WL

---

[8] Accordingly, *Gondal v. USDHS,* 343 F. Supp. 3d 83, 92 (E.D.N.Y. 2018) (Spatt, J.), incorrectly limited the § 1252(g) bar to challenges to discretionary conduct.

2632200, at *1, 4 (S.D.N.Y. Mar. 23, 2023) (Koeltl, J.).  The petition, the court reasoned, constituted an indirect challenge to the removal order.  *Id.*; *accord Lin*, 2025 WL 2158874, at *4 (holding that §§ 1252(a)(5), 1252(b)(9) and 1252(g) jurisdictionally barred petitioner's claim that ICE could not remove him while he was pursuing permanent residence); *Ceesay v. Bondi*, No. 25-CV-3716, 2025 WL 1435615, at *3 (S.D.N.Y. May 16, 2025) (Rakoff, J.) (applying §§ 1252(a)(5) and 1252(g) in declining to issue temporary restraining order barring detention while petitioner seeks writ of mandamus because granting relief "would require the Court to interfere with the execution of a lawful removal order"); *Achbani v. Homan*, No. 3:17-CV-1512, 2017 WL 4227649, at *4-5 (D. Conn. Sept. 22, 2017) (Arterton, J.) (holding that § 1252(a)(5) jurisdictionally barred the plaintiff's "claim of unlawful detention . . . grounded in his claim of right to remain in the U.S. to apply for and have adjudicated an application for a provisional unlawful presence waiver," because the "[p]laintiff's request for an order releasing him from detention necessarily indirectly challenge[d] the final removal order").

Moreover, Petitioner's claims that are premised on the assertion that the prior exclusion orders were never executed are also jurisdictionally barred by 8 U.S.C. § 1252(b)(9).  In *Rafaelano v. Wilson*, 471 F.3d 1091, 1097 (9th Cir. 2006), the petitioner, similar to Petitioner here, asserted that she was not subject to a prior effective deportation order because she voluntarily departed.[9]  However, the Ninth Circuit found that 8 U.S.C. § 1252(b)(9) strips district

---

[9] Notably, the petitioner in *Rafaelano* claimed to have voluntarily departed pursuant to an order.  471 F.3d at 1092. Here, by contrast, Petitioner does not allege or present any evidence of an agreement with, or order from, an immigration official or judge that would have permitted him to voluntarily depart and avoid being subject to an outstanding final order of removal.  *Cf. Iouri v. Ashcroft*, 487 F.3d 76, 80 (2d Cir. 2007) (discussing an "order granting voluntary departure" that would be replaced with an order of deportation if the petitioners failed to depart voluntarily).  In fact, Petitioner was issued final orders for deportation/exclusion without any provision for voluntary departure.  *See* Dawson Decl. ¶¶ 5, 8, & Exh. E, Exh. I; *Cf. Ibarra-Flores v. Gonzales*, 439 F.3d 614, 618 n.3 (9th Cir. 2006) (observing that prior to 1996, "[t]he Attorney General ha[d] authority to grant voluntary departures *prior to the initiation* of removal or deportation proceedings and to grant voluntary departures *during the pendency of* such proceedings") (emphasis added).  In any event, as discussed more fully *infra*, reinstatement under Section 1231 applies even if the petitioner voluntarily departed.  *See Rafaelano*, 471 F.3d at 1097 n.5 (noting that for aliens who

10

courts of jurisdiction to consider a petitioner's claim that reinstatement was improper because no prior valid order of removal existed where the petitioner allegedly voluntarily departed in a timely manner. *Id.* at 1092.

Petitioner's claim that ICE's actions violated the APA is also jurisdictionally barred. By its terms, the APA does not apply "to the extent that . . . statutes preclude judicial review[.]" 5 U.S.C. § 701(a)(1). As discussed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g), do exactly that by limiting review of orders of removal to the courts of appeals. Indeed, the Second Circuit, in *Delgado*, held that claims arising under the APA are jurisdictionally barred by §§1252(a)(5) and 1252(b)(9). *Delgado*, 643 F.3d at 55 ("The APA explicitly does not apply 'to the extent that . . . statutes preclude judicial review,' as [§§1252(a)(5) and 1252(b)(9)] do[] in this instance." (internal citation omitted)). Thus, Petitioner is barred from raising an APA claim here.

In sum, ICE has detained Petitioner for the purpose of executing a removal order. Adjudicating the various claims that Petitioner raises -- which arise from removal-related activity -- would require this Court to assess the validity of a reinstatement order, and granting the requested relief on any grounds would effectively stay that order. Thus, Petitioner's claims indirectly challenge the order of removal and are jurisdictionally barred by 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g).

## II. Petitioner's Arguments Are Without Merit and He Should Be Returned to the Custody of ICE Pending His Removal

Assuming *arguendo* that the Court were to find it has jurisdiction to hear Petitioner's claims, the Petition should nonetheless be dismissed, and Petitioner should be returned to the custody of ICE pending his removal, in accordance with 8 U.S.C. § 1231(a)(2)(A). Respondents

---

have been granted voluntary departure, 8 U.S.C. § 1231(a)(5) "reinstates prior orders of removal upon the alien's illegal reentry into the United States").

note at the outset that, "[h]abeas corpus . . . is not a neutral proceeding in which the petitioner and the State stand on an equal footing." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (internal citations and quotation marks omitted). Petitioner "bears the burden of proving that he is being held contrary to law." *Id.* Here, Petitioner has failed to meet his burden.

Petitioner first alleges that he "was never removed from the United States" and that "DHS never executed any prior exclusion order" (Count I). Petition ¶ 51. This assertion is flatly contradicted by the existence of *two* prior orders of exclusion and/or deportation against Petitioner. *See* Dawson Decl. ¶¶ 5, 8 & Exh. E, Exh. I.

Petitioner next alleges that he was never "physically removed" from the country, and that his voluntary departure "terminated" the exclusion proceedings (Count II). Petition ¶¶ 55-56. Contrary to Petitioner's assertion, the evidence shows that, on January 19, 1995, Petitioner was physically removed from the United States to India pursuant to the January 4, 1995 order of exclusion and deportation. *See* Dawson Decl. ¶ 8 & Exh. I. Immigration Officers retrieved Petitioner from the detention center in Elizabeth, New Jersey, escorted him to John F. Kennedy Airport in New York, and boarded him on a plane to India. Dawson Decl. ¶ 8. Notably, the instructions provided to the Immigration Officers who were tasked with removing Petitioner specifically noted that Petitioner was "LIKELY TO ABSCOND – USE CAUTION." *Id.* Thus, it cannot be refuted that Petitioner was physically removed from the country pursuant to an order of exclusion and deportation, and that his departure was involuntary.

Petitioner also claims that orders of exclusion are "legally distinct" from orders of removal and are not "automatically subject to reinstatement." (Count II). Petition ¶ 57. However, the plain language of § 1231 contradicts both assertions. Section 1231(a)(5) provides: "If the Attorney General finds that an alien has reentered the United States illegally after having

been removed *or having departed voluntarily, under an order of removal*, the prior order of removal is reinstated[.]" (emphasis added). The notes of § 1231 clarify: "For purposes of carrying out this chapter, any reference in law to an order of removal is deemed to include *a reference to an order of exclusion and deportation*[.]" (emphasis added). *See also Thapa v. Gonzales,* 460 F.3d 323, 333, n.3 (2d Cir. 2006) (stating that a reference in the INA to an order of removal is deemed to include an order of exclusion and deportation or an order of deportation ); *Warner v. Ashcroft*, 381 F.3d 534, 537 (6th Cir. 2004) (holding that "orders of removal include orders of exclusion for purposes of [§ 1231(a)(5)]"). Here, Petitioner was subject to two orders that could be reinstated: a 1993 order of exclusion, and a 1995 order of exclusion and deportation. *See* Dawson Decl. ¶¶ 5, 8 & Exh. E, Exh. I. And even if the Court were to find that Petitioner voluntarily departed, the fact that he may have departed voluntarily – as opposed to being physically deported – is irrelevant. *See Shtyllaku v. Gonzales*, 252 F. App'x 16, 18-19 (6th Cir. 2007) (rejecting petitioner's argument that "the original order of removal against him was invalid because he was granted permission to depart voluntarily from the United States . . . because an alien is still subject to an order for removal, for purposes of reinstatement, regardless of whether there was permission to voluntarily depart"); *Rafaelano*, 471 F.3d at 1097 n.5 (noting that for aliens who have been granted voluntary departure, 8 U.S.C. § 1231(a)(5) "reinstates prior orders of removal upon the alien's illegal reentry into the United States").

Petitioner next asserts three due process claims. Petitioner first argues that the prior orders of exclusion and deportation became "legally dormant upon [his] departure from the United States" and cannot be "resurrect[ed]" (Count III). Petition ¶¶ 59-60. However, Respondents are not "resurrect[ing]" an order, they are *reinstating* it, a process Congress clearly prescribed in § 1231(a)(5).

Petitioner then asserts a procedural due process violation based on his having been arrested without being provided "any prior order; a reinstatement order; an opportunity to contest identity, execution, or applicability; or review by a neutral adjudicator" (Count IV). Petition ¶ 62. However, Petitioner is not entitled to receive the prior order, a reinstatement order, or review by a neutral adjudicator. The regulation governing reinstatement – 8 C.F.R. § 241.8 – provides that "[t]he *immigration officer* . . . obtain the prior order" and that the alien receive "written notice of [the immigration officer's] *determination*." 8 C.F.R § 241.8(a)-(b) (emphasis added). Thus, Petitioner was entitled to receive only notice of ICE's decision to reinstate the prior order, not the prior order itself. Furthermore, Section 241.8(a) expressly provides that an alien subject to a reinstated order "has no right to a hearing before an immigration judge."[10]

In fact, Petitioner *was* provided with an opportunity to contest the facts underlying the reinstatement order but failed to do so. Such failure to contest the reinstatement at the agency level is fatal to his due process claims. Petitioner received the Notice of Reinstatement, which notified him that ICE "intend[ed] to reinstate the order of [r]emoval entered against" him and expressly provided that he could "contest th[e] determination by making a written or oral statement to an immigration officer." *See* Dawson Decl. ¶ 17. The Notice of Reinstatement also contained a section titled, "Acknowledgement and Response," wherein Petitioner could have indicated if he "wish[ed] to make a statement contesting th[e] determination," however, Petitioner refused to sign the Acknowledgement and Response. *Id.* By "declin[ing] to challenge at the agency level the findings that support[ed] reinstatement of [his] prior order of removal,

---

[10] In Petitioner's Supplemental Brief, he incorrectly states, without citation to evidence, that "DHS concedes that it did not possess Petitioner's complete A-file at the time of arrest and continued to gather records after detention occurred." Supplemental Brief at p. 5. At no point was any such concession made by DHS. To the extent Petitioner is referring to the fact that the U.S. Attorney's Office had not received Petitioner's immigration file as of the time of the bond hearing on January 21, 2026, that fact in no way demonstrates that DHS lacked the necessary information to reinstate the prior order of removal.

[Petitioner] has no grounds to complain in court that the reinstatement procedures deprived him of the due process of law." *Miller v. Mukasey*, 539 F.3d 159, 164 (2d Cir. 2008) (finding that there is "no meaningful difference between conceding the predicate facts, on the one hand, and choosing not to contest them, on the other"); *Familia v. Holder*, 600 F. App'x 23, 25 (2d Cir. 2015) (holding that the petitioner's "failure to contest DHS's factual findings at the agency level was equivalent to a concession of their accuracy. . . . Accordingly, [the petitioner could not] establish that he was prejudiced by any procedural deficiencies, and his due process claim fail[ed] as a result." (citation and internal quotation marks omitted)).

Furthermore, Petitioner's due process claims must fail because he has not alleged how any of the purported due process deficiencies have resulted in prejudice. The Second Circuit has held that, "[p]arties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process." *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (internal quotation marks, citations omitted); *Yuan v. Garland*, 2022 WL 12104055, at *1 (2d Cir. 2022) ("To establish a due process violation, the noncitizen must show that he was denied the opportunity to be heard in a meaningful manner, and that the alleged shortcomings have prejudiced the outcome of his case.") (citation and internal quotation marks omitted). Here, Petitioner has alleged no such cognizable prejudice, because he cannot. The evidence demonstrates that Petitioner was ordered excluded and deported in 1995, which is the only criterion for reinstatement under 8 C.F.R. § 241.8(a) that he disputes, as he does not dispute his identity or that he unlawfully reentered the United States in or around July 15, 1996. Since the documents plainly show that Petitioner was ordered excluded and deported, even if there were a procedural defect in the reinstatement process (there was not), such defect would not alter the outcome. *See Garcia-Villeda*, 531 F.3d at 150 (rejecting

15

petitioner's due process claims because he "fail[ed] to demonstrate how the alleged shortcomings . . . prejudiced the outcome of his case"); *Villegas de la Paz*, 640 F.3d at 656 (finding of Sixth Circuit – which properly had jurisdiction to review reinstatement order – that alien could not demonstrate prejudice because the "documents [presented by the government] demonstrate[d] that Villegas was ordered excluded, which [wa]s the only criterion for reinstatement that she dispute[d]. And because she d[id] not dispute that the other criteria were met, her inability to make a statement could not have affected the agency's decision"); *Avila v. U.S. Atty. Gen.*, 560 F.3d 1281, 1286 (11th Cir. 2009) ("Because the three elements of § 241.8 are satisfied, Avila cannot show substantial prejudice from his alleged inability to contest the reinstatement decision. Accordingly, the order of reinstatement did not violate Avila's due process rights."); *Garcia-Marrufo v. Ashcroft*, 376 F.3d 1061, 1064 (10th Cir. 2004) (finding that the petitioner was not prejudiced by reinstatement of his removal order, and therefore was not deprive of due process, because even if he had "been afforded additional process, the result would have been no different—the prior order of removal would have been reinstated" since he met the criteria for reinstatement).

Petitioner's final due process claim asserts that ICE lacks authority to detain him while he pursues adjustment of status through Form I-485 (Application to Register Permanent Residence or Adjust Status) and Form I-212 (Application for Permission to Reapply for Admission into the United States After Deportation or Removal) (Count V). Petition ¶¶ 65-68. These Forms are authorized by Chapter 12 of Title 8 (INA), the former by 8 U.S.C. § 1255, and the latter by § 1182(a)(9)(A)(iii). Reinstatement, however, triggers § 1231(a)(5), under which an alien "is not eligible and may not apply for any relief under [the INA]." *See also Garcia-Villeda*, 531 F.3d at

16

151 ("An illegal reentrant 'is not eligible and *may not apply for any relief*' under the INA.") (quoting 8 U.S.C. § 1231(a)(5)).

Petitioner next argues that ICE's actions violate the APA because "DHS relied on conclusory assertions rather than evidence, ignored the legal distinction between exclusion and removal, and failed to consider Petitioner's pending relief" (Count VI). Petition ¶ 71. Contrary to Petitioner's assertions, and, as discussed more fully above, DHS properly reinstated the 1995 order of exclusion and deportation. Thus, assuming *arguendo* the Court were to exercise jurisdiction to hear this claim, it should be rejected.

Petitioner's claim under the Suspension Clause is equally unavailing. Petitioner asserts that, "[b]y detaining [him] based on an unexecuted, pre-IIRIRA exclusion order and denying meaningful review of reinstatement, DHS has effectively suspended the writ of habeas corpus." Petition ¶ 73. The nature of this argument is unclear as habeas corpus proceedings are brought before federal courts, not agencies. In any event, the Court lacks jurisdiction to hear Petitioner's claims, as discussed above, and such bar to jurisdiction does not violate the Suspension Clause. *Asylum Seeker Advoc. Project*, 409 F. Supp. 3d at 227.

Petitioner raises an additional argument in his Supplemental Brief: Respondents allegedly produced an arrest warrant only after Petitioner was detained, and this warrant is deficient. Supplemental Brief at pp. 3-4. This new claim is also meritless because Petitioner was served with a Form I-205, Warrant of Removal/Deportation.[11] *See* Dawson Decl. ¶ 15. Even if Petitioner had not been arrested pursuant to the Warrant of Removal/Deportation, ICE had general authority to arrest Petitioner without a warrant. 8 U.S.C. § 1357(a)(2) provides that an

---

[11] Petitioner was served with a Warrant of Removal/Deportation even though Respondents were not required to provide one. Indeed, 8 U.S.C. § 1231(a)(2)(A) expressly provides that "[d]uring the removal period, the Attorney General *shall* detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible . . . or deportable." (emphasis added).

immigration officer may arrest an alien "if he has reason to believe that the alien . . . is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." Here, the Immigration Officers certainly had reason to believe Petitioner was in the United States in violation of immigration laws because of the prior orders of removal, as well as Petitioner's "history of fraud and willful misrepresentation[s]," and that Petitioner was "LIKELY TO ABSCOND," as indicated in the prior removal instructions, and bolstered by his failure to appear for multiple immigration hearings. Dawson Decl. ¶¶ 5, 8, 12, 14. In fact, "when [an] alien's deportability is clear and undisputed, that circumstance alone may provide a sufficient basis for an INS officer to believe that escape is likely before a warrant can be obtained." *Contreras v. United States*, 672 F.2d 307, 309 (2d Cir. 1982).

In sum, Respondents respectfully submit that Petitioner's habeas petition challenging the reinstatement of the prior removal order must be denied, and Petitioner should be returned to the custody of ICE pending his removal, in accordance with 8 U.S.C. § 1231(a)(2)(A).

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Petition for a writ of habeas corpus be denied, that Petitioner be returned to the custody of ICE by immediately reporting to the Enforcement and Removal Operations (ERO) Officer located at 26 Federal Plaza, 9th Floor,

18

Suite 9-110, New York, NY 10278, and such other further relief that the Court deems just and

proper.

Dated: Central Islip, New York
      March 4, 2026

                                JOSEPH NOCELLA, JR.
                                United States Attorney
                                Eastern District of New York
                                *Attorney for Defendant*
                                610 Federal Plaza
                                Central Islip, NY 11722

By:    */s/ Madeline O'Connor*
        Madeline O'Connor
        Assistant United States Attorney
        (631) 715-7870
        madeline.oconnor@usdoj.gov