UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
SATPAL SACHDEVA,

                     Petitioner,

          v.

ANDREA QUARANTILLO, in her
official capacity as the Long Island Field
Office Director, U.S. Citizenship &
Immigration Services, *et al*.

                  Respondents.

------------------------------------------------------x

**MEMORANDUM
& ORDER**
Civil Action No.
26-276 (GRB)

**GARY R. BROWN, United States District Judge:**

Following the July 15, 2026 denial of his petition for a writ of habeas corpus,

petitioner Satpal Sachdeva ("petitioner") moves for a stay of this Court's determination

pending appeal, a motion which consists essentially of two components: (1) an

extension of the $250,000 secured bond upon which petitioner had been released by this

Court on January 21, 2026 and (2) a directive to respondents prohibiting Sachdeva's

removal from the United States pending resolution of the appeal, so as to protect the

jurisdiction of the Court of Appeals and allow it to consider the matter.  Docket Entry

("DE") 17.  For the reasons that follow, the Court denies the motion to stay insofar as

petitioner seeks an extension of the bond but grants the motion staying his removal

from the United States pending resolution of his pending appeal.

**Background**

A summary of the facts underlying this case are contained in this Court's

Electronic Order of July 15, 2026, which provided as follows:

ORDER DENYING HABEAS PETITION -- This matter was commenced via the filing of a petition for habeas corpus relief following the arrest of petitioner Satpal Sachdeva by ICE on January 15, 2026. The next day, his counsel filed the petition, DE 1, and the Court held an emergency bail hearing on January 21, 2026. With some reticence, given the potential flight risk, the Court set a $250,000 bond for the petitioner, which was secured by properties valued at $1.4 million. Petitioner was released pursuant to that bond, DE 10, and counsel have now fully briefed the petition.

Though provided the opportunity, petitioner has provided no documentary or testimonial evidence in support of the petition. Indeed, as the thorough response by respondents' counsel demonstrates, the petition is laden with factual assertions that are demonstrably untrue. Merely by way of example, paragraph 51 of the petition alleges that he was never removed from the United States and that DHS never executed any prior exclusion order. In its response, counsel for respondents provides copies of several exclusion orders, as well as a sworn declaration detailing his involuntary removal pursuant to such orders. *See, e.g.* DE 13-1 at 3, DE 13-10. A recent IJ[1] decision detailing a 30-year history of petitioner's problematic immigration issues, which includes the use of false travel documents, fictitious identities, failure to appear for immigration proceedings and reentry into the country after twice being removed, resulted in a denial of an application for adjustment of status on February

---

[1] While the Electronic Order describes these findings as those of an Immigration Judge, the findings set forth in the Notice of Decision were, in fact, made by a USCIS Field Office Director. *See* DE 13-3. However, the factual findings set forth in the Notice of Decision are thoroughly documented in respondents' submissions, and the reference to the Notice represented a convenient summary, rather than having any particular weight because of the source of the findings. Other decisions in the record were prepared by Immigration Judges. *See, e.g.,* DE 13-6, 13-10.

3, 2025.  DE 13-3.  Petitioner's legal arguments fare no better, as some are predicated upon incorrect factual assertions while others simply misstate the law.  *See, e.g.,* DE 12 at 5 (providing arguments based upon the spurious assertion that no final order of removal had been entered in this case).  For example, while petitioner asserts that the prior exclusion orders are not automatically subject to reinstatement, DE 1, para. 57, Section 1231(a)(5) appears to make such provision.

In sum, petitioner has failed to meet his burden to establish a basis for relief.  As such, the petition is DENIED.  Consistent with the terms of the bond, counsel shall arrange for petitioner to appear before appropriate authorities for further immigration proceedings within five days of the date of this Order.  After his surrender, the bond will be discharged.  The Clerk is directed to close the case.

*See* Electronic Order dated July 15, 2026.

On July 16, 2026, counsel for petitioner filed a "Notice of Interlocutory Appeal." DE 16.  The next day, counsel filed the instant "emergency" motion pursuant to Fed. R. App. P. 8(a)(1)(A) and Fed. R. Civ. P. 62(d), seeking a stay of the portion of the Court's order (as characterized by counsel) requiring petitioner "to surrender to immigration authorities" by July 20, restoring the bail package and permitting petitioner to remain at liberty pending appeal, "thereby allowing the Second Circuit a meaningful opportunity to decide an unresolved legal question concerning the scope of 8 U.S.C. § 1231(a)(5)." DE 17 at 2.  Additionally, the motion seeks relief to ensure that petitioner "may [not] be transferred outside this District or removed before the Second Circuit can determine whether the statutory framework invoked by DHS lawfully applies."  DE 17 at 4.

Counsel then filed a letter on July 20 requesting expedited review of the motion by that date at 1 p.m., as petitioner "has been advised that he is expected to be taken into ICE custody [on July 20]." DE 18 at 1. In response, the Court entered an order granting the motion in part, directing that petitioner not be removed from the United States pending disposition of the appeal. Electronic Order dated July 20, 2026. This opinion further explains the Court's determination.

*Discussion*

As my colleague Judge Chen recently observed:

Section 2241 confers jurisdiction on federal district courts to hear habeas cases. *Zadvydas v. Davis,* 533 U.S. 678, 687, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (explaining that Section 2241 "authorize[s] any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws … of the United States'" (quoting 28 U.S.C. § 2241(c)(3))); *see also Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978) ("[A] district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody."). This "inherent power … extends to admitting petitioners to bail in the immigration habeas context." *L.G.M.,* 788 F. Supp. 3d at 404 (quoting *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 153 (2d Cir. 2007) (itself citing *Mapp v. Reno*, 241 F.3d 221, 227 (2d Cir. 2001) (internal quotations omitted)). A petitioner under Section 2241 "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States,* 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31, 113 S.Ct. 517,

121 L.Ed.2d 391 (1992); *Walker v. Johnston*, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941)).

*R.A.R.R. v. Almodovar*, 824 F. Supp. 3d 299, 305 (E.D.N.Y. 2026).

Following the filing of the petition, this Court held a bail hearing. "[A] court considering a habeas petitioner's fitness for bail must inquire into whether the habeas petition raises substantial claims and whether extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001). Here, based on the allegations of the petition, the Court made a preliminary determination that it presented immigration issues that warranted further review. DE 15 at 5-6. As to extraordinary circumstances, the conditions of detention, which included housing petitioner for some time at the Nassau County Correctional Center, appeared to satisfy the second *Mapp* factor. *Id.*; *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("He was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes."); *Clarke v. U.S. Dep't of Homeland Sec.*, No. 25-CV-6773 (GRB), 2025 WL 3674471, at *9 (E.D.N.Y. Dec. 18, 2025) (conditions of confinement can satisfy extraordinary circumstances prong). The bail review was necessarily done quickly, and without the benefit of a complete record.

At the bail hearing, respondents introduced, via proffer, suggestions that petitioner had used false names, fraudulent immigration documents and resorted to a sham marriage, some of which was denied by petitioner's counsel. DE 15. As a result,

the Court expressed significant concerns regarding the provision of bail to petitioner. *See, e.g.,* DE 15 at 7 ("there is a troubling history here."). These concerns are reflected in the amount of the bond— $250,000 secured by real property represented to have a value of $1.4 million— an amount of an entirely different magnitude and quality compared to bonds set by the undersigned in other cases arising from the recent surge in immigration arrests. *Compare, e.g., Garcia Lanza v. Noem,* 822 F. Supp. 3d 326, 331 (E.D.N.Y. 2026) ("immediate release on personal recognizance"); *Sanchez Alfaro v. Mullin*, No. CV 26-0766 (GRB), 2026 WL 1142478, at *1 (E.D.N.Y. Apr. 27, 2026) ("petitioner was released on his own recognizance"); *Flores v. Mullin*, No. CV 26-1855 (GRB), 2026 WL 948298, at *4 (E.D.N.Y. Apr. 8, 2026) ("Out of an abundance of caution, the Court orders that the petitioner and the proposed suretor execute a $5,000 appearance bond."). Indeed, as the Court noted in its Order denying the writ, bail was set "[w]ith some reticence, given the potential flight risk." *See* Electronic Order dated July 15, 2026. Nevertheless, having satisfied the requirements under *Mapp*, bail was set, and the parties were given time to complete the record and fully brief the petition.

In responding to the petition, respondents' counsel provided well-documented submissions detailing the extensive fraudulent immigration activities in which petitioner had engaged over many years. *See generally* DE 13-1 through 13-20. Of greater concern for these purposes is the fact that respondents demonstrated that crucial factual assertions in the petition were false or misleading. For example, paragraph 51 of the petition states that "Petitioner was **never removed from the United States**, and

DHS never executed any prior exclusion order." DE 1 (emphasis original). Yet, in a sworn declaration, respondents aver that:

> On January 4, 1995, Petitioner was ordered excluded and deported from the United States. *See* Exh. I. On January 19, 1995, Petitioner was removed from the United States to India. His removal was involuntary. Immigration Officers retrieved Petitioner from the detention center in Elizabeth, New Jersey, escorted him to John F. Kennedy Airport in New York, and boarded him on a plane to India. *See* Exh. J; Exh. K.

DE 13-1 at 3. The declarant supplied copies of an order of exclusion signed by an immigration judge along with other supporting records detailing petitioner's involuntary removal. DE 31-10, 11 & 12.

This showing belies numerous factual assertions made by petitioner in the petition. DE 1 ¶14 ("[i]n 1995, [he] again voluntarily departed the United States"); ¶28 ("Petitioner was never physically removed from the United States by the Government"); *id.* ("the record reflects that Petitioner departed the United States on his own after exclusion proceedings . . . without DHS executing removal or supervising departure."); ¶31 ("DHS has not demonstrated that any exclusion order was executed[;] DHS effectuated Petitioner's departure; or Petitioner departed 'under' an exclusion order rather than independently."). Indeed, the petition is largely predicated on the notion that petitioner was never removed pursuant to the exclusion orders and thus, such orders cannot be reinstated.

In 1991, petitioner had, based on the record evidence submitted by respondents, entered the country using a false passport under the name Sham Lal Sobino Ram

Verma, and after being apprehended by immigration officials, signed an affidavit averring that his real name was Sarjit Singh.  DE 13-1 at 2.  In 1994, he attempted to employ a counterfeit Form I-512, leading to his deportation.  *Id.* at 2-3.  Thereafter, in or around 2001, he attempted to gain immigration status as the purported husband of an American citizen, after reporting (seemingly falsely) having been divorced from his current wife — and sole suretor — Jaswinder Kaur.  *Id.* at 3-4.  The 2025 Notice of Decision sets forth facts that give rise to the inference that the marriage was, in fact, a sham.[2]  DE 13-3 at 2.  Taken together, this showing amply supports the agency's conclusion that petitioner has a "history of fraud and willful misrepresentation."  DE 13-17 at 3.

In response to this substantial showing, which includes evidence undermining factual assertions made in the petition and by his counsel, petitioner offered the following: Nothing.  No evidence.  No documents.  No sworn declaration.  While his counsel continued to make arguments, there was absolutely no evidence or further factual assertions offered to support the petition.  Instead, petitioner relies exclusively upon legal argument, including raising questions as to whether (1) the reinstatement provision of 8 U.S.C. § 1231(a)(5) requires a prior order of removal, rather than a deportation order; (2) pre-IIRIRA exclusion orders constitute an order of removal for these purposes; (3) petitioner "remains eligible for adjustment of status despite his manner of entry, history of alleged fraud, and prior exclusion order" and (4) such

---

[2]  At the bail hearing, petitioner's counsel provided a procedural exegesis from which he argued that respondents "do not have enough evidence to prove his previous marriage was a sham marriage."  Tr. 11.

claims are cognizable on a petition for habeas relief or fall within the jurisdiction-stripping provisions of INA.[3] DE 14.

While this Court has plainly rejected petitioner's legal arguments,[4] such rejection does not form the core of the denial of the petition, as other factors were dispositive. Scrutiny of the record reveals that here, unlike many recent ICE cases, an administrative warrant was obtained in advance of the arrest, DE 13-20 at 4, and was based upon a substantial factual record. *Compare, e.g., Garcia Lanza*, 822 F. Supp. 3d at 333 (noting that a "post-arrest administrative warrant was plainly invalid" and "agents had no cause to arrest and imprison" petitioner). Furthermore, when confronted with a substantial evidentiary showing that the petition was predicated on false factual assertions, petitioner provided no evidence to refute respondents' submission or otherwise support his claims. Under these circumstances, petitioner failed to meet his burden of proof entitling him to habeas relief.

Furthermore, these subsequent developments heighten concerns surrounding petitioner's release on bond. The evidentiary showing by the Government, which is neither explained nor refuted by the petitioner, include the apparent use of multiple identities, fraudulent documents, a sham marriage and criminal immigration violations

---

[3] For example, petitioner's requests that this Court "[d]irect Respondents to cease treating Petitioner as subject to reinstatement and stay execution of any reinstatement, so he may pursue adjustment of status and any waivers for which he is statutorily eligible," DE 14 at 11, appear well outside the scope of a habeas writ.

[4] *See* Electronic Order dated July 15, 2026 (noting regarding petitioner's arguments that "some are predicated upon incorrect factual assertions while others simply misstate the law.").

by petitioner.[5]  False statements in court documents filed by petitioner further heighten concerns.  Finally, the decision by the Court rejecting petitioner's habeas claims could also serve as an incentive to flee.  Thus, the application to stay the revocation of this Court's bail determination is denied.

At the same time, the immigration issues raised by petitioner's counsel arise from a complex area of the law, and this Court should endeavor to protect petitioner's rights to appropriate appellate review.  Thus, petitioner's motion for an order directing that petitioner not be removed from the United States pending resolution of the appeal is granted.

*Conclusion*

Based on the foregoing, the motion to stay the Court's determination is GRANTED insofar as respondents shall not remove the petitioner from the United States pending disposition of the filed appeal and is otherwise DENIED.

Dated: July 21, 2026
     Central Islip, New York

SO ORDERED.

   /s/          
GARY R. BROWN
United States District Judge

---

[5]  Notably, the Notice of Intent/Decision to Reinstate Prior Order is predicated, in part, on violation of 8 U.S.C. § 1326, which expressly includes reentry by a foreign national who has "been denied admission, excluded, deported or removed or has departed the United States while an order of exclusion, deportation or removal is outstanding."